IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AAMCO TRANSMISSIONS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>PERRY BRUNO, JAMES R. FLEMING, DONALD E. FISHER, and JRF BKD, LLC,<br><br>Defendants. | Case No. |

**COMPLAINT FOR INJUNCTIVE RELIEF**

Plaintiff AAMCO Transmissions, LLC f/k/a AAMCO Transmissions, Inc. ("ATL"), by its attorneys, and for its complaint against defendants Perry Bruno ("Bruno"), James R. Fleming ("Fleming"), Donald E. Fisher ("Fisher"), and JRF BKD, LLC ("JRF"), states as follows:

**INTRODUCTION**

1. ATL is the franchisor of the network of AAMCO®-branded transmission repair and total car care centers operating throughout the United States and Canada (collectively, "AAMCO Centers," and individually, each an "AAMCO Center"), which independent franchisees own and operate under written franchise agreements with ATL.

2. Defendant Bruno is the former franchisee of an AAMCO Center located at 4450 Steubenville Pike, Pittsburgh, Pennsylvania (the "Robinson Center"). After the Robinson Center's franchise agreement expired, Bruno elected not to renew it and instead converted the Robinson Center to a competitive business that operates under the name "Autoworx" in violation of the franchise agreement's post-expiration noncompetition covenant. ATL recently discovered that defendant Bruno acquired the Autoworx brand during the term of the franchise agreement when,

in violation of the franchise agreement's in-term noncompetition covenant, he secretly bought a nearby independent center that operated under that brand.

3. Defendant Bruno is now targeting the franchisee owners of other AAMCO Centers to induce them to breach their franchise agreements with ATL by converting their centers to the Autoworx brand.

4. Specifically, defendants Fleming and Fisher, through their entity, defendant JRF, owned and operated an AAMCO Center at 201 South Euclid, Pittsburgh, Pennsylvania (the "East End Center"). They recently unilaterally terminated the franchise agreement under which they operated the East End Center by converting it to a competitive business under the Autoworx brand.

5. In addition to violating their noncompetition covenants, defendants continue to use ATL's federally-registered trademarks, including the "AAMCO" mark, misleading the public into believing that the Autoworx centers are associated with ATL when they are not.

6. ATL has initiated an arbitration demand against defendants for the damages caused by their conduct under each franchise agreement's mandatory arbitration provision. ATL brings this action under an exclusion to those provisions for certain claims for equitable relief. Accordingly, ATL seeks a preliminary and permanent injunction to enjoin defendants' trademark infringement, unfair competition, violations of the franchise agreements' noncompetition covenants, and tortious interference with ATL's contractual relationships with its franchisees.

**PARTIES**

7. ATL is a limited liability company organized under the laws of Pennsylvania with its principal place of business in Horsham, Pennsylvania.

8. Defendant Bruno is a citizen and resident of Pennsylvania.

9. Defendant Fleming is a citizen and resident of Pennsylvania.

10. Defendant Fisher is a citizen and resident of Pennsylvania.

11. Defendant JRF is a limited liability company organized under the laws of Pennsylvania with its principal place of business in Monroeville, Pennsylvania. Fleming and Fisher are the sole owners and members of JRF (collectively, the "JRF Defendants").

## JURISDICTION AND VENUE

12. The Court has original subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338, and 1367 because this is a civil action involving claims arising under the laws of the United States, including an Act of Congress relating to trademarks, and wherein all other claims are so related to claims within the Court's original jurisdiction that they form part of the same case or controversy.

13. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this district. Defendants also expressly agreed under their respective franchise agreements that, subject to the mandatory arbitration provisions, any action between the parties would be brought in this Court, and they irrevocably consented and waived any objection to jurisdiction and venue in this Court.

## FACTUAL ALLEGATIONS

**A.     The AAMCO franchise system**

14. ATL is the national franchisor of the AAMCO®-brand of transmission repair and total car care centers defined previously as AAMCO Centers. There are currently more than 500 independently owned and operated franchised AAMCO Centers in operation throughout the United States and in Canada.

15. ATL grants franchises to qualified persons to own and operate franchised AAMCO Centers under written franchise agreements with ATL.

16. Under those franchise agreements, ATL grants franchisees a limited license to

operate their centers under ATL's trademarks during the term of the agreement.

17. ATL also provides its franchisees access to the AAMCO® system (including ATL's proprietary sales and general business techniques, methods, and procedures); initial and ongoing technical training and advice; extensive advertising assistance; and national accounts and discounted pricing on certain equipment and supplies, such as remanufactured transmissions. ATL has developed these benefits at great effort and expense, and they afford ATL and its authorized franchisees a substantial competitive advantage in the automotive repair industry.

**B.     The AAMCO trademarks**

18. To identify the source, origin, and sponsorship of its products and services, and to distinguish those products and services from those established, made, offered, and sold by others, ATL and its franchisees have extensively used certain trademarks, service marks, trade names, logos, emblems, and indicia of origin in connection with the operation of authorized AAMCO Centers.

19. ATL's federally-registered trademarks include "AAMCO" and "AAMCO Transmissions Total Car Care," which are registered on the Principal Register of the United States Patent and Trademark Office (the "USPTO"), Registration Numbers 851,209 and 3,875,638, respectively (together, the "AAMCO Marks"). The AAMCO Marks' declarations of incontestability have been acknowledged and approved by the USPTO, and their federal registrations continue in full force and effect.

20. ATL owns the AAMCO Marks, has given notice to the public of the registration of the AAMCO Marks as provided in 15 U.S.C. § 1111, and complies with all legal requirements to ensure that it, its affiliates, and its authorized franchisees remain the exclusive users of the AAMCO Marks.

21. ATL, its affiliates, and its authorized franchisees have continuously used the AAMCO Marks in interstate commerce in connection with the promotion, sale, and franchising of AAMCO Centers, and the promotion, offer, and sale of the products and services they offer throughout the United States since the date of the AAMCO Marks' registrations.

22. ATL, its affiliates, and its authorized franchisees have extensively advertised and promoted the AAMCO Marks and the products and services they offer in association with those marks throughout the United States and through various media. As a result of such efforts and the considerable money spent in connection with those efforts, the products and services offered by ATL, its affiliates, and its authorized franchisees under the AAMCO Marks have been met with widespread public approval and have established demand and goodwill among customers and consumers throughout the United States.

**C.     Bruno and the Robinson Center**

23. Effective May 31, 1994, Bruno entered into a franchise agreement with Cottman Transmission Systems, LLC ("CTS") to own and operate the Robinson Center at a different address for an initial term of 15 years.

24. Effective February 28, 2007, in connection with CTS and ATL coming under common corporate parent ownership, Bruno converted the Robinson Center from the Cottman brand to the AAMCO brand under a written amendment and assignment agreement.

25. In 2009, ATL and Bruno renewed the franchise agreement for an additional 15-year term (the "Robinson Franchise Agreement").

26. Bruno then moved the Robinson Center to its current address where it operated continuously as an AAMCO Center until the franchise agreement's recent expiration.

**D.     JRF, Fleming, Fisher, and the East End Center**

27.     Effective December 1, 2014, Fleming and his former business partner, through their entity JRF, entered into a franchise agreement (the "East End Franchise Agreement" and together with the Robinson Franchise Agreement, the "Franchise Agreements") to own and operate the East End Center, which had been operating continuously as an AAMCO Center under various franchisee owners since 1964.

28.     Fleming and his former business partner personally guaranteed JRF's performance and payment obligations and agreed to be bound by, and personally liable for the breach of, each provision of the East End Franchise Agreement.

29.     In 2019, defendant Fisher acquired the former business partner's interest in JRF with ATL's approval. In connection with that process, Fisher signed a personal guaranty like the one described in the prior paragraph.

**E.     The Parties' Rights and Obligations**

30.     Under each Franchise Agreement, defendants agreed, among other things, to operate their respective AAMCO Centers for the duration of the agreements' terms and to pay ATL a continuing license fee equal to a percentage of the gross business transacted at their respective AAMCO Centers.

31.     To induce ATL to enter into the Franchise Agreements and provide defendants with a limited license to use the AAMCO Marks (and the goodwill associated with those marks) and access to its proprietary system, defendants each agreed to not engage in any competitive auto repair business (i) anywhere during the term of the agreement and (ii) within ten miles of their former AAMCO Center for a period of two years after the termination or expiration of the Franchise Agreement.

32. Defendants further agreed that upon termination or expiration of the Franchise Agreements, they would cease using the AAMCO Marks and make no representations that they were associated with ATL or the AAMCO® system.

33. The Franchise Agreements each contain mandatory arbitration provisions that exclude claims for equitable relief relating to the AAMCO Marks or violations of the noncompetition covenant.

34. Under the East End Franchise Agreement and Fleming's and Fisher's personal guarantees, the prevailing party in any court proceeding is entitled to recover its costs and attorneys' fees incurred in the proceeding.

**F.    Defendants' Breaches**

35. Unknown to ATL at the time, Bruno acquired a competitive auto repair business called "European Autoworx" located at 1725 Golden Mile Hwy, Monroeville, Pennsylvania, more than a year before the Robinson Franchise Agreement expired.

36. After the Robinson Franchise Agreement expired, Bruno converted the Robinson Center to a competitive business that operates under the name "Autoworx Robinson."

37. Bruno continues to use the AAMCO Marks to advertise and promote Autoworx Robinson. For example, the business's website (https://www.autoworxrobinson.com) states the following:

   a. "With our team of highly skilled technicians who previously served at AAMCO Transmissions and Total Car Care, we bring decades of experience to our new location under the Autoworx Robinson banner."

   b. "Just like at AAMCO, our goal at Autoworx Robinson is to provide not only the best products and services in the automotive industry but also unparalleled customer service."

   c. "Autoworx Robinson is a full-service auto repair and maintenance center, specializing in both automatic and manual transmissions – an expertise carried over from our AAMCO days."

      d.      "When you bring your vehicle to us, you can expect excellent service and peace of mind, just as you did at AAMCO."

38. What's worse, Bruno is now targeting the franchisee owners of other AAMCO Centers to induce them to breach their franchise agreements and convert to the Autoworx brand.

39. With more than five years remaining on the East End Franchise Agreement, the JRF Defendants recently abandoned the East End Center by converting it to a competitive business called "Autoworx East End."

40. Upon information and belief, Bruno induced the JRF Defendants to convert the East End Center in violation of the East End Franchise Agreement.

41. Moreover, despite converting the East End Center, the JRF Defendants continue to prominently display the AAMCO Marks on the exterior of the building and other signage on the premises and on the competitive business's website (https://www.autoworxeastend.com).

42. ATL at all times fully performed its obligations under the Franchise Agreements.

## COUNT I - TRADEMARK INFRINGEMENT
**(against all defendants)**

43. AAMCO repeats and realleges the foregoing paragraphs as if fully set forth herein.

44. Defendants' acts, practices, and conduct constitute infringing use in interstate commerce of the AAMCO Marks, and they have caused and are likely to cause consumer confusion or mistake and deceive the public in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

45. Defendants' wrongful acts were, and continue to be, knowing and willful.

46. As a direct and proximate result of defendants' infringement, ATL has suffered—and unless such infringement is enjoined, will continue to suffer—actual, substantial, and irreparable harm, including, without limitation, diminution in the value of the AAMCO Marks, diminution in the value of its goodwill and reputation, shrinkage of its center count and brand

presence, and incalculable lost revenues and profits.

47. ATL has no adequate remedy at law because the AAMCO Marks are unique and represent to the public ATL's identity, reputation, and goodwill, such that damages alone cannot fully compensate it for defendants' misconduct.

48. Unless enjoined by the Court, defendants will continue to infringe the AAMCO Marks to ATL's irreparable injury. This threat of injury to ATL's business, identity, goodwill, and reputation requires injunctive relief to prevent defendants' continued infringement of the AAMCO Marks and to ameliorate and mitigate ATL's injuries.

### COUNT II - UNFAIR COMPETITION
**(against all defendants)**

49. ATL repeats and realleges the foregoing paragraphs as if fully set forth herein.

50. Defendants' acts, practices, and conduct—including their unauthorized use of the AAMCO Marks in connection with their operation of a competitive business—constitute unfair competition, and false or misleading descriptions or representations of fact, in that they are likely to cause confusion or mistake, to deceive others as to the affiliation, connection, or association of the parties, and/or to misrepresent the nature, characteristic, qualities, or geographic origin of the parties' goods, services, and commercial activities, all in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

51. Defendants' acts were, and continue to be, knowing and willful.

52. As a direct and proximate result of defendants' unfair competition, ATL has suffered—and unless such unfair competition is enjoined, will continue to suffer—actual, substantial, and irreparable harm, including, without limitation, diminution in the value of the AAMCO Marks and proprietary system, diminution in the value of its goodwill and reputation, loss of competitive advantage, shrinkage of its center count and brand presence, and incalculable

lost revenues and profits.

53. ATL has no adequate remedy at law because the AAMCO Marks and system are unique, were developed at great expense and effort, and represent to the public ATL's identity, reputation, and goodwill, such that damages alone cannot fully compensate it for defendants' misconduct.

54. ATL also has no adequate remedy at law because the components of the AAMCO® system are unique, were developed, tested, refined, and perfected at great expense and effort, and afford ATL and its authorized franchisees a competitive edge that is lost if defendants are permitted to continue to use the system in breach of their franchise agreements, none of which can be quantified and for which monetary damages alone cannot fully and completely compensate ATL.

55. Unless enjoined by the Court, defendants will continue to compete unfairly with ATL to its irreparable injury. This threat of injury to ATL and its business, identity, goodwill, and reputation requires injunctive relief to prevent defendants' continued unfair competition and to ameliorate and mitigate ATL's injuries.

### **COUNT III – BREACH OF CONTRACT – SPECIFIC PERFORMANCE**
**(against all defendants)**

56. ATL repeats and realleges the foregoing paragraphs as if fully set forth herein.

57. Defendants' failure to comply with their post-termination obligations under the franchise agreements, including, without limitation, their noncompetition covenants, constitute a material breach of their franchise agreements and personal guarantees.

58. As a result of these ongoing breaches, ATL has suffered and will continue to suffer actual, substantial, and irreparable harm, including without limitation, loss of customer goodwill and loyalty, franchise system instability, the inability to refranchise the territory formerly serviced by defendants' AAMCO Centers, lost profits, diminution in the value of the AAMCO® system,

damage to ATL's goodwill, shrinkage of center count and brand presence, and loss of competitive advantage.

59. ATL has no adequate remedy at law because the AAMCO® system is unique, was developed at great expense and effort, and affords ATL and its authorized franchisees a competitive edge that is lost if defendants are permitted to continue to use it, none of which can be quantified and for which monetary damages alone cannot fully and completely compensate ATL.

60. Absent injunctive relief enjoining defendants' misconduct and ordering specific performance of their post-termination covenant to not compete, defendants' material breaches will continue to cause ATL irreparable harm.

## **COUNT IV – TORTIOUS INTERFERENCE**
**(against Bruno)**

61. ATL repeats and realleges the foregoing paragraphs as if fully set forth herein.

62. ATL has established contractual relationships under written franchise agreements with each of its franchisees and personal guarantees with franchisees' principals, including with each of the defendants individually.

63. The franchise agreements and personal guarantees are valid and enforceable contracts.

64. As a former franchisee himself, Bruno has actual knowledge of ATL's franchise agreements and their terms.

65. By the conduct described above, Bruno wrongfully and intentionally solicited and induced the other defendants to breach, disrupt, and/or terminate their franchise agreement, noncompetition covenants, and personal guarantees with ATL.

66. Bruno's actions were intentional, wrongful, and malicious.

67. As a direct and proximate result of Bruno's actions, ATL has suffered and will

continue to suffer actual, substantial, and irreparable harm, including, but not limited to, loss of goodwill and franchisee loyalty, franchise system instability, lost profits, diminution in the value of the AAMCO® system and brand, shrinkage of center count and brand presence, and loss of competitive advantage.

68. Unless his tortious and unlawful conduct is enjoined, Bruno will continue to intentionally interfere with ATL's contractual rights under franchise agreements with other ATL franchisees, including but not limited to the other AAMCO®-franchised Centers in the Western Pennsylvania and Eastern Ohio territories.

## PRAYER FOR RELIEF

**WHEREFORE,** ATL respectfully prays for the following relief against defendants:

A. A preliminary and permanent injunction enjoining defendants, and each of their respective agents, servants, and employees, and those people in active concert or participation with them, from:

   1. Using the AAMCO Marks, or any trademark, service mark, logo, or trade name that is confusingly similar to the AAMCO Marks;

   2. Passing off any products or services as those of, or associated with, ATL or ATL's authorized franchisees;

   3. Causing a likelihood of confusion or misunderstanding as to their affiliation, connection, or association with ATL, ATL's franchisees, the AAMCO® system, or with any of their products or services; and

   4. Unfairly competing with ATL or ATL's franchisees in any manner.

B. A preliminary and permanent injunction directing defendants, and each of their respective agents, servants, and employees, and those people in active concert or participation with them, to fully perform their contractual obligations, including, without limitation, their obligations to refrain from competing with ATL and its franchisees in the manner required by their respective franchise agreements and personal guarantees;

C. A preliminary and permanent injunction enjoining Bruno, and his agents, servants, and employees, and those people in active concert or participation with them, from communicating with or soliciting any franchisee of ATL or any employee of any AAMCO Center for purposes of inducing a brand switch, and from interfering with their contractual relationships with ATL;

D. An order that defendants file with the Court and serve upon ATL's counsel within ten days after entry of any injunction or order issued herein, a written report, under oath, setting forth in detail the manner in which they have complied with such injunction or order;

E. An award of the costs and expenses, including reasonable attorneys' fees and costs, incurred by ATL in connection with this action; and

F. Such other and further relief as the Court deems just and proper.

Dated: January 28, 2025

Respectfully submitted,

**AAMCO TRANSMISSIONS, LLC**

By: _____
Kevin O'Connor
PECKAR & ABRAMSON, P.C.
70 Grand Avenue
River Edge, New Jersey 07661
(201) 343-3434
koconnor@pecklaw.com

-and-

Aaron-Michael Sapp (*pro hac vice forthcoming*)
Stephen C. Jarvis (*pro hac vice forthcoming*)
CHENG COHEN LLC
363 W. Erie Street, Suite 500
Chicago, Illinois 60654
Tel.: (312) 243-1701
Fax: (312) 277-3961
asapp@chengcohen.com
stephen.jarvis@chengcohen.com